**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William DAVIS, Defendant-Appellant.**

**No. 16959.**

United States Court of Appeals
Seventh Circuit.

June 6, 1969.

Rehearing Denied July 17, 1969.

Edward F. Neubecker, Frinzi, Catania & Neubecker, Milwaukee, Wis., for defendant-appellant.

James B. Brennan, U. S. Atty., Thomas R. Jones, Thomas Weil, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KNOCH, Senior Circuit Judge.

The defendant-appellant, William Davis, was indicted together with one Elvin Adams, on a charge of violating Title 18, U.S.C. § 2421, transporting a female, one Judith Ann Hein, in interstate commerce for the purpose of prostitution. Mr. Davis' motion for severance was granted. He waived trial by jury. He was tried by the Court and convicted. He was sentenced to serve two years' imprisonment.

The co-defendant, Mr. Adams, testified at the appellant's trial. He stated that he had met Miss Hein in Milwaukee and that in June, 1966, they had traveled to Chicago together with the defendant, to get married there, that they left Milwaukee to avoid the violent opposition of another friend of Miss Hein's, one Aldus Nicholas, whom she feared. He said they were in fact married in the Cook County Courthouse in Chicago by a local Judge on July 5, 1966. The marriage license was an exhibit in the trial. The co-defendant testified further that he lived at the Pershing Hotel in Chicago where he had originally registered as "Mr. and Mrs. Adams" although he was single at the time. He said that he and Miss Hein moved from the Pershing to the Roberts Hotel to avoid Mr. Nicholas' pursuit, but that Mr. Nicholas had found Mr. Adams at the Roberts, threatened him with a firearm. An altercation followed which resulted in a shooting and Mr. Adams had been arrested on a charge of battery which was later dismissed. He testified that he saw Miss Hein, who had then become his wife, in the police station and at the preliminary hearing in Court but had neither seen nor heard from her after that and assumed that his marriage was ended. He described himself as married but separated. He denied ever procuring for Miss Hein and stated that if she had engaged in prostitution in Chicago it was without his knowledge.

Mr. Davis himself testified generally to the same effect. He said he went to Milwaukee to see his mother and his attorney and paid his friend, Mr. Adams, to drive him as he had no license which permitted him to drive in Milwaukee. He said he and Mr. Adams met Miss Hein in a bar in Milwaukee in June, the week before the Fourth of July, and that he agreed to allow his friend and Miss Hein to drive back with him to Chicago because they wished to be married there, that the co-defendant had dropped Miss Hein at his own hotel and had driven the defendant home. Mr. Davis recognized a registration card for the Pershing Hotel made out on June 20th as in his handwriting. He said he rented the room for the use of his visiting cousin and his wife, but signed the name "Mr. and Mrs. James Cooper" which was a name by which he was sometimes known, and giving his own home address, because he was paying for the room. He said he paid for a longer period than needed because the hotel demanded an advance deposit and

he neglected to secure a return of that deposit when his cousin and his wife used the room only for a few days. He said he and his own wife had looked at the room once to be sure it was all right and that the hotel records were in error in showing a check-out for June 30. He denied that another registration card shown him (in the name of "Mr. and Mrs. Davis") was made out by him and said he never rented a hotel room there. He said he had a drink with the co-defendant and Miss Hein twice and she had visited his home once after the marriage, and that after the shooting incident, at her request, he had taken her to the police station; that she later made advances to him which he had declined. He flatly denied having any relations with her, viewing her as the wife of his best friend, and denied having procured clients or rooms for her, denied having visited the hotels about which he was asked, stating that he had visited the Roberts Hotel only once to check on the co-defendant's clothing.

Miss Hein's testimony sharply contradicted that of the defendant and the co-defendant. She testified that she met both for the first time on June 24, 1966, although she had heard of the defendant before. She said that she accompanied them to another tavern and agreed to visit a third when she found herself instead, against her will, on the way to Chicago. She testified in detail that defendant took her to several hotels over a period of some ten days where she engaged in prostitution, returning frequently to the rooms she occupied with the co-defendant at the Pershing and later the Roberts Hotel. She testified to turning over her earnings to both men but described the defendant as primarily the one who took her to the hotels and who made the arrangements for her. She said she was forced to marry the co-defendant during this period and after the shooting incident and her visit with Mr. Nicholas at the hospital, she returned to Milwaukee. She said she had not left earlier and had taken no advantage of the numerous op-portunities to secure help because she was frightened, even when she was by herself in the streets and shops of Chicago, at the clinic where pre-marital blood tests were made, at the Courthouse where she was married, and at the police station when the co-defendant was arrested.

Defendant argues that the evidence of Miss Hein is inherently improbable and that a question of law is therefore presented on which this Court may reverse the conviction. The defendant concedes that a showing of unwillingness on the part of Miss Hein is not required to sustain the judgment, but he contends that the events she relates are so connected that the inherent improbability of her testimony renders it all unworthy of belief.

Joanne Marion Lowry testified that she was with the two defendants and Miss Hein at two bars in Milwaukee, driving in the defendant's automobile, and that she heard no conversation about marriage or going to Chicago. Defense counsel argued at the trial that there was no reason for her to remember such things after so long a time. Similarly when there was some testimony that the two defendants and Miss Hein were seen together at hotels and bars, the defense argued that these incidents were equally consistent with the testimony of the two defendants as with that of Miss Hein.

Nevertheless, we are faced with an issue of credibility. The Trial Judge said he had given all of the evidence and the arguments considerable thought and there was no question at all in his mind, that he was compelled to find the defendant guilty as charged.

▇▇ We will not weigh the credibility of the witnesses, United States v. Bruni, 7 Cir., 1966, 359 F.2d 807, cert. den. 385 U.S. 821, 87 S.Ct. 48, 17 L.Ed. 2d 59, and we must view the evidence in the light most favorable to the government, United States v. Mims, 7 Cir., 1965, 340 F.2d 851, cert. den. 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434. ·

It is entirely possible that the Trial Judge saw Miss Hein as a willing victim who had fully co-operated in the design to transport her to Chicago from Milwaukee for the purpose of engaging in prostitution.

 Two days after this defendant's trial, the co-defendant was tried, also without a jury, before the same District Judge and found not guilty. Defendant contends that the two verdicts are rationally irreconcilable. We do not have the record of the second trial before us. Some possible differences between the two defendants are suggested by the evidence in this defendant's trial. As the government points out, Miss Hein's testimony shows that it was this defendant who played the principal role in taking her to the various hotels. The co-defendant was a hired driver, although also a friend of the defendant. During the trip to Chicago, Miss Hein did not travel in the front of the automobile with the co-defendant, but in the rear of the car with this defendant. Without the record we can only engage in idle conjecture as to why the District Court found insufficient evidence in the second trial to convict the co-defendant. We are satisfied that the judgment of the District Court as to this defendant must be affirmed.

Affirmed.